# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DEVAUGHAN SMITH,       )
                      )
       Plaintiff,      )
                      )
   v.              )     Civil Action No.  14-1853 (RCL)
                      )
                      )
U.S. DEPARTMENT OF JUSTICE,  )
                      )
       Defendant.     )

## MEMORANDUM OPINION

In this action brought under the Freedom of Information Act ("FOIA"), plaintiff challenges the response of the Drug Enforcement Administration ("DEA") to his request for records pertaining to a third party.  Pending is defendant's Motion to Dismiss and for Summary Judgment, ECF No. 6.  Plaintiff has filed an opposition, ECF No. 13, and defendant has replied, ECF No. 16.  For the reasons explained below, the Court will grant defendant's motion and enter judgment accordingly.

## I. BACKGROUND

In March 2007 a federal jury in the Eastern District of Louisiana convicted plaintiff of murder-for-hire and cocaine distribution.  *United States v. Smith*, No. Crim. A. 06-325, 2010 WL 3942884, at *2 (E.D. La. Oct. 6, 2010).  In April 2013, plaintiff mailed a FOIA request to DEA that was addressed to the Federal Bureau of Investigation.[1]  Decl. of Katherine L. Myrick ¶ 4 & Ex. A, ECF No. 6-3.  Plaintiff

---

[1]    On January 9, 2015, plaintiff moved to hold this case in abeyance pending the outcome of a FOIA request that he "is currently resubmitting" to the FBI.  Mot. for Leave to Hold in Abeyance to Amend at 1, ECF No. 9.  Because there is no indication that plaintiff has exhausted his administrative remedies with the FBI, and the request

sought (1) records pertaining to himself and "criminal action #2.06-cr-000325," (2) the cooperation agreement of Lamont Lee, who had testified at plaintiff's criminal trial, and (3) his phone records as to incoming calls on September 4, 2006 "that [were] within the [criminal case] only."

By letter dated April 26, 2013, DEA informed plaintiff (1) that it had conducted a search of its files but located no records pertaining to him and (2) that it was neither confirming nor denying the existence of records about Lee.  Myrick Decl., Ex. B.  In addition, DEA "noted [that the] request letter . . . referenced the [FBI]," and suggested that plaintiff "may wish to forward a request to that agency as under the FOIA, agencies are only responsible for records under the control and custody of each agency." *Id*. at 1 (emphasis omitted).

In a letter to the Department of Justice's Office of Information Policy ("OIP") dated May 14, 2013, plaintiff stated that he was appealing DEA's decision "in part." *Id*., Ex. C.  Plaintiff specified that "[t]he in part denial of my request is improper because Lamont Patrick Lee is not exempt under the third party privacy act[,] [having] testified in open court on March 19-20, 2007." *Id*. at 1.  Plaintiff further stated that Lee's "cooperation agreement was suppose[d] to be disclosed to [plaintiff's] trial lawyer before trial . . . under the discovery rule," *id*., but that "[t]he government refused to accede to [his] trial lawyers' request and purposely withheld . . . Lee's cooperation agreement, and other evidence by the government." *Id*. at 2.  Plaintiff then requested "any and all available public information regarding Lamont Lee's

is in any event beyond the scope of this litigation, the Court will deny plaintiff's motion.  If plaintiff is dissatisfied with the FBI's final response, nothing decided in this action will preclude him from filing a new FOIA action.

cooperation agreement only[.]" *Id*.  He also provided his cell phone number "to assist [ ] with obtaining all incoming calls only for [ ] September 4, 2006[.]" *Id*.

In a letter to plaintiff dated August 13, 2013, the Chief of Administrative Appeals stated: "I note that you have limited your appeal to the portion of your request pertaining to a third party witness cooperation agreement," and upon that clarification, affirmed DEA's response "on partly modified grounds[.]" Myrick Decl., Ex. E.  OIP determined that DEA had properly refused to confirm or deny the existence of responsive records and added that absent "consent, proof of death, official acknowledgment of an investigation, or an overriding public interest, confirming or denying the existence of law enforcement records concerning an individual could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id*. (citing 5 U.S.C. § 552(b)(7)(C)).

In November 2014, plaintiff filed a document captioned "Vaughn v. Rosen Motion," which was construed as a complaint.  Plaintiff named DEA's Katherine L. Myrick as the defendant but was granted leave on July 8, 2015, to substitute the Department of Justice.  The complaint is difficult to follow but concludes with a request for an order compelling DEA to disclose Lee's cooperation agreement and related documents, as well as all "communications" pertaining to plaintiff's "case No. 13-00299-P" that DOJ possesses.  Compl. at 21.

## II.  LEGAL STANDARD

Summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the

initial burden of production as to the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A genuine issue of material fact exists if the evidence, viewed in the light most favorable to the nonmoving party, "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In a FOIA case, summary judgment can be awarded based on information provided by the agency in affidavits or declarations, *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981), that are "relatively detailed and non-conclusory." *SafeCard Services v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Such affidavits or declarations "are accorded a presumption of good faith." *Id*.  "An agency must demonstrate that 'each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements.' " *Long v. Dep't of Justice*, 450 F.Supp.2d 42, 54 (citing *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal citation and quotation omitted)).  To "successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Span v. DOJ*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (quoting *DOJ v. Tax Analysts*, 492 U.S. 136, 142 (1989)).

## III.  DISCUSSION

### 1.  Glomar Response

DEA's position to neither confirm nor deny the existence of records pertaining to Lee is commonly referred to as a "Glomar response." *See Phillippi v. CIA*, 546

F.2d 1009 (D.C. Cir. 1976) (approving such response by the CIA regarding the secret "Glomar Explorer" vessel).  A Glomar response is proper if confirming or denying the requested record "would itself 'cause harm cognizable under an FOIA exception.' " *Am. Civil Liberties Union ("ACLU") v. CIA*, 710 F.3d 422, 426 (D.C. Cir. 2013) (quoting *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1178 (D.C. Cir. 2011)) (other citation omitted).  Such response is not appropriate if the existence of the requested record has been officially acknowledged, *see id*. at 426-27, or is public knowledge, *Marino v. DEA*, 685 F.3d 1076, 1081 (D.C. Cir. 2012).  *See ACLU*, 710 F.3d at 427 ("In the Glomar context," it is not "the contents of a particular record" that is at issue "but rather the existence *vel non* of any records responsive to the FOIA request.") (internal quotation marks omitted).  Thus, to overcome summary judgment, plaintiff need show only "that the agency has already disclosed the fact of the existence (or nonexistence) of responsive records, since that is the purported exempt information that a Glomar response is designed to protect." *ACLU*, 710 F.3d at 427.

Plaintiff refutes DEA's Glomar response on the premise that Lee's "personal information [and identity are] already known to [him.]"  Pl.'s Opp'n at 22.  But this is of no material consequence and exhibits a basic misunderstanding about the FOIA because "when a document must be disclosed under FOIA, it must be disclosed to the general public and the identity of the requester is irrelevant to whether disclosure is required."  *Stonehill v. IRS*, 558 F.3d 534, 538-39 (D.C. Cir. 2009) (citations omitted).

Plaintiff also contends that the requested agreement has been publicly disclosed through Lee's purported testimony at plaintiff's trial.  He points to pages from unauthenticated transcripts of unidentified witnesses testifying at unidentified

proceedings.  Pl.'s Opp'n, ECF pp. 83-89, 105.  The latter page consists of testimony

about "working as a CI" for a Special Agent and receiving payment for "cooperating."

*Id*., p. 105.  Plaintiff also points to an FBI document, FD-302, detailing Lee's

cooperation with FBI agents that led to plaintiff's arrest, *id*., ECF pp. 103-104, and

letters between plaintiff's attorney and the prosecuting attorney with regard to

discovery during the criminal proceedings, *id*., ECF pp. 75-82.  The Court has sifted

through plaintiff's proffered documents and finds that none establishes the existence

of a written cooperation agreement between Lee and *DEA*.  This is not surprising

since, according to DEA's declarant, a " 'cooperative agreement' is entered into

between an individual and a prosecuting attorney" and "is not a DEA record."[2]  Supp'l

Decl. of Katherine L. Myrick ¶ 17, ECF No. 16-1.

DEA's declarant explains that DEA "employs" a Glomar response "to requests

for information related to the identity of and information provided by confidential

sources" when "the informant's status has not been officially confirmed."  *Id*. ¶ 23

(number supplied).  It does so "to protect the identity of [confidential] sources" that a

requester might be able to obtain "through the process of elimination" if the agency

denies having such records.  *Id*.  In addition, the declarant avers that "merely

confirming that any individual is mentioned in a DEA investigative record system . . .

can have a potentially stigmatizing or embarrassing effect" that "would constitute a

violation of an individual's privacy" protected by FOIA exemptions 6 and 7(C),

codified in 5 U.S.C. § 552(b).  Suppl. Myrick Decl. ¶ 20; Myrick Decl. ¶¶ 16-17

---

[2]    In his opposition, plaintiff changes the scope of his request to a "Plea/Cooperation
Agreement" and then suggests that DEA "failed to acknowledge that . . . Lee's
Plea/Cooperation Agreement is public records . . . ."  *Id*., ECF p. 22.  But the request
forming the basis of this action does not include a plea agreement, and DEA's
interpretation of the request as seeking a cooperation agreement was reasonable.

(averring same).  Indeed, as a general rule applicable here, information about a third-party contained in law enforcement records is categorically exempt from disclosure absent the subject's consent or waiver.  *See Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 389 (D.C. Cir. 2007) (concluding that any error in invoking Glomar was harmless in light of the government's proper invocation of exemption 7(C) to protect the informant's information); *Plunkett v. Dep't of Justice*, 924 F. Supp. 2d 289, 300 (D.D.C. 2013) (" 'As a result of Exemption 7(C), FOIA ordinarily does not require disclosure of law enforcement documents (or portions thereof) that contain private information.' ") (quoting *Blackwell v. FBI*, 646 F.3d 37, 41 (D.C. Cir. 2011)). And the Court of Appeals has specifically "held that not only the targets of law-enforcement investigations, but also 'witnesses, informants, and . . . investigating agents' have a 'substantial interest' in ensuring that their relationship to the investigations 'remains secret.' "  *Roth*, 642 F.3d 1174 (quoting *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 666 (2003)).

Since there is no indication in this record that the requested third-party records exist, and the privacy interests are substantial, the Court finds that defendant is entitled to judgment as a matter of law on its Glomar response.[3]

---

[3]    Plaintiff faults DEA for failing to search by Lee's name "and to blacken out all of . . . Lee's personal information[.]"  Pl.'s Opp'n at 22.  But this argument completely misses the point (and defeats the purpose) of both the Glomar response approved here and FOIA's privacy exemptions 6 and 7(C) that generally shield from disclosure records retrievable by third-party identifiers.  *See* Myrick Supp'l Decl. ¶ 11 (explaining why "DEA will not conduct searches for investigative information related to a third party in the absence of proof of death, a Privacy Act release authorization, or a showing of a strong public interest that outweighs any privacy interest by the requester.").

**2.  Adequacy of the Search**

Plaintiff also questions the reasonableness of DEA's search.  *See* Pl.'s Opp'n at 22.  DEA counters that this issue is not properly before the Court because plaintiff failed to exhaust his administrative remedies with regard to any other aspect of the request.  *See* Defs.' Reply at 3-4.  The record supports DEA's position, but plaintiff's failure to exhaust does not deprive the court of jurisdiction "because the FOIA does not unequivocally make it so." *Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003).  "Exhaustion of administrative remedies is generally required before filing in federal court," *id.*, and "FOIA's administrative scheme favors treating failure to exhaust as a bar to judicial review," *id.* at 1259 (citations and internal quotation marks omitted).  However, because DEA found no records responsive to plaintiff's first-party request, and the record is sufficiently developed to assess DEA's search for those records, there is "no risk of undermining the purposes and policies underlying the exhaustion requirement, namely, to prevent premature interference with agency processes, to give the parties and the courts benefit of the agency's experience and expertise and to compile an adequate record for review." *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004).  Hence, the Court will address the reasonableness of DEA's search for records pertaining to plaintiff.

FOIA requires that an agency undertake a search "reasonably calculated to uncover all relevant documents." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C.Cir.1983). "[R]easonably calculated" means "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Students Against Genocide v. Dep't of State*, 257

F.3d 828, 838 (D.C. Cir. 2001) (internal citations omitted).  Because the agency is the possessor of the records and is responsible for conducting the search, the Court may rely on "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched."  *Valencia Lucena v. United States Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (citing *Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 388 (D.C. Cir. 1996); *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)).

"To merit summary judgment on the adequacy of a search, an 'agency must demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents.' "  *Students Against Genocide*, 257 F.3d at 838 (quoting *Nation Magazine v. U.S. Customs Service*, 71 F.3d 885, 890 (D.C. Cir. 1995)).  Adequacy and reasonableness turn not on the yield of the search, but on the "appropriateness of the methods used to carry out the search."  *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (internal citation omitted).  "[T]he fact that a particular document was not found does not demonstrate the inadequacy of a search."  *Boyd*, 475 F.3d at 390-91 (citations omitted).  Summary judgment is inappropriate "if a review of the record raises substantial doubt" about the reasonableness of the search.  *Valencia Lucena*, 180 F.3d at 326 (citing *Founding Church of Scientology v. Nat'l Security Agency*, 610 F.2d 824, 837 (D.C. Cir. 1979)).

Defendant's declarant states that "DEA's criminal law enforcement investigative records are . . . reasonably likely to be found in the DEA's Investigative

Reporting and Filing System (IRFS)," and that such records are retrieved via "DEA's Narcotics and Dangerous Drugs Information System (NADDIS)."  Myrick Decl. ¶ 9. IRFS "contains all administrative, general, and criminal investigative files compiled by DEA for law enforcement purposes."  Supp'l Myrick Decl. ¶ 13.  Investigative case files "are established by the office commencing an investigation [and] are titled according to the name of the principal suspect violator or entity known to DEA at the time the file is opened.  DEA does not maintain separate dossier investigative case files on every individual or entity that is of investigative interest."  *Id.*

"Individuals are indexed and identified in NADDIS by their name, Social Security Number, and/or date of birth.  Without the required information, an individual and files that would contain information pertaining to an individual cannot be identified with a reasonable amount of effort."  *Id.* ¶ 16.  In addition, an individual is assigned a "unique and specific" number.  Records "indexed under a given NADDIS number are not marked . . . with a court's case name [or] case file number, or with a statement that the information in the record is public information."  Myrick Decl. ¶ 12.  Hence, DEA "ha[d] no way of identifying through IRFS the [public] records that plaintiff requested."  *Id.* ¶ 14.  DEA searched NADDIS by plaintiff's name and social security number and found "no qualifying information."  *Id.* ¶ 10.  Consequently, "[w]ith nothing on [plaintiff] in DEA's investigative record system, there would be no means by which [DEA] could locate any other information related to Lamont Lee."  *Id.*

Based on Myrick's description of DEA's filing systems and the search methods employed, the Court finds that DEA conducted a search reasonably calculated to

locate records pertaining to plaintiff and finds plaintiff's speculative argument that the search was incomplete unavailing. *See* Pl.'s Opp'n at 22 (faulting DEA for limiting its search to one record system without indicating what other systems should have been searched).

### 3. Duty to Reroute a FOIA Request

Finally, plaintiff contends that DEA should have referred "his request to the appropriate agency if their department has records that are generated by another agency so that [p]laintiff's request can proceed further." Pl.'s Opp'n at 23. DOJ's regulations provide that "[w]here a component's FOIA office determines that a request was misdirected within the Department, the receiving component's FOIA office shall route the request to the FOIA office of the proper component(s)." 28 C.F.R. § 16.4 (d). But rather than treating plaintiff's request as "misdirected," DEA took on the responsibility of processing the request, which plaintiff did not question. Now that plaintiff has submitted a request to the FBI, any potential claim arising from DEA's failure to reroute the request is moot in any event.

Moreover, in its April 26, 2013 decision, DEA properly informed plaintiff that its statutory obligation extended to processing records in its custody and control at the time of the FOIA request. *McGehee v. CIA*, 697 F.2d 1095, 1110 (D.C. Cir. 1983). DEA further informed plaintiff that he "may wish to forward a request" to the FBI, which is consistent with DOJ's regulation that FOIA requests be submitted to the agency's components.[4] *See* 28 C.F.R. § 16.3(a) ("The Department has a decentralized

---

[4]   In the Complaint's Conclusion, plaintiff includes, seemingly as an afterthought, an omnibus request for all communications DOJ possesses with regard to another of his criminal cases "No. 13-00299-P." Compl. at 21. Nowhere in the complaint does plaintiff claim to have submitted such a request to DOJ and exhausted his

system for responding to FOIA requests, with each component designating a FOIA

office to process records from that component . . . . To make a request for records of

the Department, a requester should write directly to the FOIA office of the component

that maintains the records being sought.")  For it is only when an agency has received

a FOIA request that "reasonably describes [the requested] records" and "is made in

accordance with published rules stating the time, place, fees (if any), and procedures

to be followed," 5 U.S.C. § 552(a)(3)(A), that it becomes obligated to search for and

disclose responsive records.  *See Tyree v. Hope Village, Inc.*, 677 F. Supp. 2d 109,

110 (D.D.C. 2009) ("An agency subject to the FOIA is required to disclose records in

response to a FOIA request only if certain conditions are met.").

## CONCLUSION

For the foregoing reasons, the Court concludes that DEA satisfied its

obligations under the FOIA.  Consequently, DOJ is entitled to judgment as a matter of

law.  A separate order accompanies this Memorandum Opinion.


_____s/_____
ROYCE C. LAMBERTH
Date: July 20, 2015                      United States District Judge

---

administrative remedies with regard to any withholding of records.  Consequently,
jurisdiction is wanting over this aspect of the complaint.  *See Judicial Watch, Inc. v.
U.S. Secret Serv.*, 726 F.3d 208, 214-15 (D.C. Cir. 2013) ("The Act grants federal
district courts jurisdiction "to order the production of any agency records improperly
withheld from the complainant.") (quoting 5 U.S.C. § 552(a)(4)(B)).  Even without the
jurisdictional barrier, no cognizable claim has been stated.  *See Tyree v. Hope Village,
Inc.*, 677 F. Supp. 2d 109, 110-11 (D.D.C. 2009) (plaintiff who failed to comply with
DOJ's FOIA regulations "did not effectively initiate a FOIA request, let alone exhaust
his administrative remedies as he is required to do" before seeking judicial review).